OPINION OF THE COURT
Meyer, J.
 Presented by this appeal are questions concerning the right to a bill of particulars with respect to a charge of *277 burglary and of whether Sandoval[1] rulings by both the pretrial Judge and the Trial Judge improperly denied defendant the possibility of testifying in his own behalf. For the reasons set forth below, we conclude that neither the denial of the particulars motion nor the several Sandoval rulings constituted an abuse of discretion. The order of the Appellate Division should, therefore, be affirmed.
Defendant was indicted and charged with rape in the first degree and burglary in the second degree. The burglary count accused defendant of "knowingly entering and unlawfully remaining in the dwelling of [complainant] with intent to commit a crime therein”, but did not specify the crime he was accused of intending to commit. Defendant made an omnibus motion (1) to dismiss the indictment, (2) for a bill of particulars, and (3) under Sandoval to preclude the People from using his prior convictions to impeach his credibility. The court denied the Sandoval relief in its entirety, denied the motion to dismiss the indictment, and denied that portion of the motion for a bill of particulars which requested that the People specify which crime defendant intended to commit within the building.
The prior convictions to which the Sandoval motion was addressed were for disorderly conduct (1963), for petit larceny (1963), for attempted felonious possession of drugs (1967), for robbery in the second degree (1971), and for criminal trespass (1975). The motion was repeated to the Trial Judge at the beginning of the trial, at the end of the People’s case and at the end of defendant’s case. The Trial Judge denied all three applications, however, on the ground that he could not overrule the pretrial Judge, a Judge of co-ordinate jurisdiction.
The fact setting in which these issues arise is sufficiently indicated by the following summary of the relevant testimony: Complainant was awakened at about 1:30 a.m. in her bedroom by a man who, she testified, was a stranger to her and who had no authority from her to enter her house. After the man left she found a window open in one of the other rooms. A textbook, pamphlet, registration and receipt card with defendant’s name on it and a schedule of classes for City College, which defendant attended, were found 10 to 12 feet from complainant’s house. Defendant identified the books, card and schedule as his. A storm window screen had been removed *278 from a window of the house and was propped against the side of the house about three feet from the window. The window faced an alleyway between complainant’s house and the adjacent building, was in a poorly lighted area and was surrounded by shrubbery. When apprehended a short distance from the house defendant first stated "I live here” but then stated "Well, I don’t live here. I used to live here. I’m visiting friends.” The house was a two-family house in which the complainant’s sister had previously resided in the apartment which at the time of the incident was occupied by complainant and in which house two other sisters resided as tenants in the basement apartment. The tenant sisters and a man friend of theirs all testified that complainant had been present with defendant on a number of occasions, that the house was like "open house” to the two men who were friendly with both sets of sisters. Complainant’s sister testified that she had moved out of the house about three months prior to the incident and admitted that she had socialized with the tenant sisters and the men, but swore that though defendant had been present in the house while complainant lived there, defendant and complainant were never in each other’s presence.
I
Defendant’s motion for particulars as to the burglary count requested "that The People be required to inform [the defense] as to the specific crime which it will allege that the defendant intended to commit inside of the complainant’s premises”. He relies upon our holdings in People v Iannone (45 NY2d 589) and People v Fitzgerald (45 NY2d 574) as supporting his contention that denial of the requested particulars was an abuse of discretion to such a degree as to amount to reversible error. That reliance is misplaced.
Iannone and Fitzgerald held that indictments which stated no more than the bare elements of the crimes charged and in effect parroted the statute were sufficient, while noting that the defendants could discover the particulars of the crimes by requesting a bill of particulars. But the particulars to which a defendant indicted by such a document is entitled are the particulars of the crime charged, here burglary in the second degree, which requires only a knowing entry "with intent to commit a crime therein” (Penal Law, § 140.25; emphasis supplied). The predecessor sections of the Penal Law of 1909 were phrased in terms of "some crime” (§§ 402, 403), "a crime” *279 (§ 404) and "any crime” (§ 406) and we are told by Professor Arnold Hechtman’s Practice Commentary (McKinney’s Cons Laws of NY, Book 39, Penal Law, § 140.20, p 37) that "Similarly the Revised Penal Law’s definition of burglary is satisfied if the intruder’s intent, existing at the time of the unlawful entry or remaining, is to commit any crime.”
Thus, to secure a conviction for burglary the State "need not establish what particular crime the intruder intended to commit” (Hechtman, loc. tit), nor is it necessary that the intended crime in fact be committed (id.). Nor is there any unfairness to a defendant in so holding, for as we pointed out in Iannone 45 NY2d, at p 598): "[T]he need to utilize the indictment as the means of resolving any double jeopardy inquiry has been considerably alleviated by the modern practice of maintaining full records of criminal proceedings which may be considered by subsequent courts. Similarly, the function of the indictment as the vehicle for assuring that the crime for which the defendant is tried is the one for which he was indicted by the Grand Jury is of less significance due to the practicability of using sources extraneous to the indictment should a challenge be made on those grounds (see CPL 210.30).”
The reason for the rule is pragmatic: intent is subjective, and must be established by proof of defendant’s conduct and other facts and circumstances (see McCourt v People, 64 NY 583, 586; People v Oliver, 4 AD2d 28, 31, affd 3 NY2d 684). If the State must prove an intent to commit a particular crime as distinct from the general intent to commit crime, the trial of a burglary indictment becomes an exercise in hairsplitting similar to that which, prior to 1942, engulfed the Penal Law’s larceny article in a sea of technicalities (see, e.g., People v Noblett, 244 NY 355; and Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 155.05, p 113).
Had the Legislature intended the result for which defendant argues it could easily in revising the Penal Law have inserted the word "specified” or the word "particular” between "a” and "crime”. It did not do so and the dissent points to nothing in the legislative history of the present provisions or in our prior holdings that requires such a result, relying instead on decision of Federal and State courts construing the statutes of other States. We have not in the past and do not now find those decisions persuasive.
*280 Thus, in People v Gilligan (42 NY2d 969) we made clear that the People need prove only that defendant intended to commit a crime during his illegal presence in the building, for we there held that defendant’s intent to commit a crime on entering the building "could be inferred beyond a reasonable doubt from the circumstances of the breaking”. Similarly, People v Henderson (41 NY2d 233), citing People v Terry (43 AD2d 875), recognized that the intent necessary for burglary can be inferred from the circumstances of the entry itself. The out-of-State cases on which the dissent relies proceed from the premise that the burglary statute "is a proscription on entry of a dwelling with any one or more of a certain category of specific intents and not merely a proscription against entry with a generally evil or criminal intent” (United States v Thomas, 444 F2d 919, 921). If that premise be accepted, it follows that intent to commit a specific crime being an element of the offense, a due process problem might exist if the specific crime is not particularized. But unless there is read into the words "a crime” more than the Legislature has stated, intent to commit a specific crime is not an element, and the necessity for particulars, and with it the due process question, disappears.
The fallacy involved in the contrary view is pointed up by the suggestion of the dissent that "in the absence of indicia of a different criminal intent”, larceny may be specified as the intended crime (p 284). The cases cited in support of that proposition do clearly so hold, but they also make clear that the jury may infer from the circumstances of the entry if not explained to their satisfaction that larceny was intended (United States v Thomas, 444 F2d, at p 924, supra; State v Woodruff, 208 Iowa 236, 243; Commonwealth v Ronchetti, 333 Mass 78, 81) and that the rationale behind the rule is that the usual object of burglary is theft and that unless a presumption of larceny is indulged "the burglar caught without booty might escape the penalties of the law” (State v Woodruff, 208 Iowa, at pp 239-240, supra; United States v Thomas, 444 F2d, at p 924, supra). To hold that a specific not a general intent is required, but allow the specific intent to be proved by inferring it from the same evidence that would prove the general intent, is simply to indulge in circular reasoning.
Had defendant’s motion for particulars demanded the basis upon which the People would contend that he intended to commit a crime its denial may have been error (CPL 200.90). *281 But the demand as framed asked only for information that was not a necessary element of burglary — the specific crime that defendant intended to commit — and its denial, therefore, was not an abuse of discretion. Moreover, there not only was clear evidence from which the jury could infer general intent to commit a crime,[2] but it also is clear that defendant’s trial strategy was in no way affected. Defendant took no exception to the failure to charge intent to commit a specific crime; he did, however, consistent with his strategy of showing prior association, permission to enter and inferentially consent to intercourse, make a number of requests for a charge that the People had to prove beyond reasonable doubt that he had no license or privilege to enter complainant’s dwelling. There is, therefore, no basis for reversal in defendant’s first point.[3]
II
Defendant argues that he was prejudiced by the rulings on his Sandoval motions by not being able to testify in a situation in which it was essentially the complainant’s word against his. He suggests that at the very least it was error to deny the motion at the end of his case after he had presented witnesses to establish that he and complainant, who denied ever having seen him before, had been present together at parties in the same house in which she lived.
In view of the nature of the offense and its age it would not have been error to suppress the disorderly conduct conviction, nor, though petit larceny is more closely related to veracity than disorderly conduct, to suppress the petit larceny charge. Both occurred when defendant was 13 years old. However, as we have made clear in People v Shields (46 NY2d 764, 765), "the exclusion of prior convictions is largely, if not completely, a matter of discretion which rests with the trial courts and fact-reviewing intermediate appellate courts” (see People v Duffy, 36 NY2d 258, 263, cert den 423 US 861). We cannot say that the ruling of the pretrial Judge or that of the Trial Judge denying the motion made just prior to trial *282 constituted the clear abuse of discretion that would make it reversible error.
Nor can we say that the denial of the motions during trial were such an abuse. Though our Sandoval ruling permits motions both before and during trial when circumstances warrant, and it may be argued that the Trial Judge, therefore, denied the last two motions in too summary a fashion, it was under Sandoval defendant’s burden to demonstrate that the prejudicial effect of admission so far outweighed the probative worth of the evidence as to warrant its exclusion. The motions as made sought exclusion of the 1967, 1971 and 1975 convictions, counsel stating that he assumed that those from 1963 would not be used, and the only reason advanced for renewal was, as to the first that defendant’s case was about to begin, and as to the second that defendant’s two witnesses had testified. Under these circumstances, adherence to the ruling of the pretrial Judge is not such an exercise of discretion as, after affirmance by the Appellate Division, warrants reversal.
Accordingly, the order of the Appellate Division should be affirmed.

. (People v Sandoval, 34 NY2d 371.)

. Removal of a screen from a window located along the darkened alleyway between the houses and concealed by shrubs.

. His acquittal of the charge of rape does not indicate otherwise, as the dissent suggests, for he was convicted of the lesser included offense of coercion in the second degree. Thus, the jury found compulsion not consent (see Penal Law, § 135.60). By its burglary conviction it also found that defendant entered without leave for the purpose of committing a crime, which is all the Penal Law requires.