THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CLYDE W. IVORY, Appellant.

Third Department, February 23, 1984

APPEARANCES OF COUNSEL

*Charles T. Currey* (*Harold Weisbaum* of counsel), for appellant.

*Benjamin J. Bucko, District Attorney* (*William A. Lange, Jr.,* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

During the early morning hours of October 22, 1981, the tenant in apartment D in an apartment house located at 152 East State Street in the City of Ithaca was awakened by a noise coming from the fire escape outside her rear third floor window and saw a shadow at the window. Shortly thereafter, she heard someone in the hallway outside the door to her apartment rattling the doorknob.

After another short interval, she observed a black male wearing a dark shirt with a white streak in front attempting to open a bedroom window from the outside immediately adjacent to a jewelry box inside. She telephoned the police. Unrelated to her call, an Ithaca police officer on foot patrol was in the immediate vicinity and observed that the fire escape at 152 East State Street had been lowered and that a second floor rear door was open. He then saw a black male, wearing a black sweater with a white streak across the front, climbing into an open rear window in the adjacent building at 150 East State Street. He hailed that person, who did not respond but continued his progress into the building. The officer radioed for assistance, ran to the front of the building, where he asked two passersby to keep a lookout, and then returned to the rear of the building. There he observed the same individual exiting the building through the same window and then entering 152 East State Street. The officer gave pursuit through the building and out the front door and, with the assistance of a fellow officer, arrested defendant, who was wearing the above-described apparel.

Defendant was indicted for burglary in the second degree in connection with the entry into the hallway of 152 East State Street, attempted burglary in the second degree for his attempt to enter apartment D of that building through the door and window, and for burglary in the third degree at 150 East State Street. At the trial, he was identified by the tenant of apartment D and by the arresting officer as the person whom they saw engaged in those acts on the night in question. Defendant testified on his own behalf and admitted having entered both buildings, but denied that he had intended to commit any crime therein. He explained that, after a serious argument with his wife, he had spent the entire evening drinking beer at a bar and then decided not to go home but to seek out and stay overnight in the apartment of a friend whom he was only able to identify as "Ken". It was during his efforts to locate Ken's apartment that he entered the two buildings. He denied fleeing as the police officer had described in his testimony. The jury apparently rejected defendant's version and convicted him of all three charges. Defendant

received concurrent sentences, the most severe of which was an indeterminate term of imprisonment of not more than six nor less than three years.

■ We conclude from our reading of the record that the evidence was sufficient to sustain the convictions. The prosecution was not required either to plead or prove the specific crime defendant had intended to commit in unlawfully entering or attempting to enter the subject premises since, clearly, the circumstances and defendant's acts here were sufficient to support an inference of criminal intent (see *People v Mackey,* 49 NY2d 274, 278-280).

■ The evidence was also sufficient to sustain defendant's conviction for burglary in the second degree, based upon his entry into the hallway of the apartment house at 152 East State Street, without his ever having actually entered any of the apartments therein. Defendant argues that the hallway, if considered a "separate building" in a building consisting "of two or more units separately secured or occupied" (Penal Law, § 140.00, subd 2), could not fall within the definition of a "dwelling" (Penal Law, § 140.00, subd 3) for purposes of establishing that element of the crime of burglary in the second degree (Penal Law, § 140.25, subd 2). Under the original enactment of the revised Penal Law (L 1965, ch 1030) as well as its predecessor statute (former Penal Law [1909], § 401), individual units of apartment houses were deemed exclusively to be separate dwellings, as the previously quoted portion of the definition of "building" suggests. As such, the hallway may not have been considered a dwelling for the purpose of elevating the degree of the crime of burglary (see *People v Haupt,* 218 App Div 251). However, the treatment of structures divided into separate units under article 140 of the Penal Law was modified by a 1967 amendment to the definition of building, making each such unit not only a separate building but also "a part of the main building" (Penal Law, § 140.00, subd 2; L 1967, ch 791, § 14). Thus, even if we were to accept defendant's argument that the hallway was a separate unit of the apartment house, it was also part of the "main building", consisting of the entire apartment house structure. Since that entire building was concededly used for overnight lodging by various persons,

it fell literally within the definition of "dwelling" for purposes of establishing that element of burglary in the second degree. The Legislature clearly intended by this amendment to expand the meaning of the term building and, correlatively, that of the term dwelling as to burglaries of multiunit structures, and we do not find that it produces such an anomalous result here as to militate against literal application of the statutory language.

We have examined defendant's remaining points and find them equally unpersuasive. Accordingly, his conviction should in all respects be affirmed.

The judgment should be affirmed.

MAHONEY, P. J., CASEY, MIKOLL and HARVEY, JJ., concur.

Judgment affirmed.