THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN M. GOLDSMITH, Appellant.

Third Department, April 30, 1987

**APPEARANCES OF COUNSEL**

*Martin A. Luster* for appellant.

*Benjamin J. Bucko, District Attorney (Robert C. Mulvey* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

At about 1:00 A.M. on May 19, 1985, defendant called his uncle, Ken Harding, and in an extremely angry tone told Harding to meet him at a downtown location in the City of Ithaca, Tompkins County, in order to accompany him to the Town of Danby, Tompkins County, where a man named Tucker lived. Defendant advised Harding that "Tucker had ripped him off, and he was tired of it".

Harding went to the designated location and defendant arrived accompanied by Joseph Carpenter. Defendant produced two loaded AR-15 semiautomatic rifles from the trunk of his car, handed one to Harding, and told him that he wanted Harding to back him up when he went to talk to Tucker. Defendant kept a semiautomatic rifle for himself and carried a side-arm in a holster at his side.

Defendant drove with Carpenter to Tucker's residence. Harding followed. Harding overheard defendant tell Carpenter to knock on Tucker's door and advise whomever opened the door that he had car trouble and to request permission to use the telephone. Defendant stood aside and when Mary Alpern, Tucker's girlfriend, opened the door in response to Carpenter's

knock, defendant, carrying his rifle, rushed into the residence demanding to see Tucker. When Alpern told him that Tucker was not home, defendant went from room to room, pointing the rifle into the rooms as he entered.

Alpern, fearful for her two children, tried to call the police but discovered that her phone was dead. Defendant then told Alpern that he had slashed the tires of her car and set the vehicle afire a few days earlier because Tucker owed him $60,000. When defendant left, Alpern went to a neighbor's house and called the police.

Thereafter, defendant was indicted on charges of burglary in the first degree, kidnapping in the second degree, conspiracy in the fourth degree and reckless endangerment in the first degree. At the close of the People's case, Supreme Court dismissed the counts of kidnapping and reckless endangerment on the ground of insufficiency of evidence. The defense presented one witness, defendant's former girlfriend, who testified that Tucker burglarized her home on May 17, 1985 and that defendant went to Tucker's home on the day in question to talk with him.

The jury found defendant guilty of burglary in the first degree and conspiracy in the fourth degree. He was sentenced to concurrent indeterminate terms of imprisonment of 2 to 6 years for burglary and 1 to 3 years for conspiracy. This appeal by defendant ensued.

■ We reject defendant's argument that his conviction for burglary cannot stand because there was insufficient evidence for the jury to properly infer that he intended to commit a crime when he entered and remained on Tucker's premises. This contention is based on defendant's argument that the prosecution limited its theory of culpability to defendant's intent to commit kidnapping on the premises, and since that charge was dismissed at the close of the People's case his criminal intent was not proven beyond a reasonable doubt. The record clearly contains sufficient evidence from which the jury could have properly inferred that defendant unlawfully entered and remained in Tucker's premises with the intent to commit a crime. Moreover, in the first count of the indictment, defendant was alleged to have entered and remained in the dwelling "armed with a deadly weapon, with the intent to commit a crime". Further, defendant offers no support for his position that the kidnapping count contained in an indictment which also charged burglary limited the prosecution's theory

of burglary. Such an assertion runs counter to the Legislature's apparent intention in broadly defining the specific intent required of burglary *(see, People v Mackey,* 49 NY2d 274, 279). Only where the prosecution expressly limits its theory regarding the particular crime that a defendant intended to commit will the People be held to it *(see, People v Mackey, supra; People v Bess,* 107 AD2d 844, 846). No such express limitation was made by the People herein. Defendant, angry and armed, tricked his way into Tucker's home at about 2:00 A.M., and even if it could be argued that he did not commit a charged crime, the unusual circumstances of the entry together with evidence of his apparent mental state provide a sufficient basis for the jury to infer defendant's criminal intent *(see, People v Bess, supra).*

Next, we also reject defendant's argument that his due process rights were violated when the jury was permitted to consider that defendant may have intended to commit a crime other than those charged in the indictment upon his unlawful entry into Tucker's premises. Although Supreme Court charged the jury with the six elements of burglary in the first degree, noting that the element of intent required that defendant intended to commit a crime within the dwelling at the time of the unlawful entry, it did not mention any particular crime except to state that "burglary is a separate and distinct crime from any crime which the person does commit or may have in mind committing within the dwelling". After a juror questioned the court with regard to the possible crimes which might serve as a predicate for burglary, Supreme Court recited legal definitions of larceny, robbery, menacing, assault and malicious mischief. Based on this supplemental instruction, defendant claims that he was tried for crimes with which he was not charged.

We disagree. The Court of Appeals in *People v Mackey* (49 NY2d 274, *supra)* expressly held that since the specific crime that an intruder intended to commit is not an element of burglary, the prosecution need not establish it. Finally, the prosecution need not show that the predicate crime was committed, for to do so "would saddle the People with a burden more onerous than the law exacts" *(People v Bess,* 107 AD2d 844, 846, *supra).*

Turning to the close of the case, we hold that while it was improper for the prosecution in its summation to comment on the crimes of aggravated harassment and burglary, since there was no evidence supporting an intent to commit

aggravated harassment and it was legally impossible to use burglary as a predicate crime, such error was harmless. There was direct evidence of defendant's intrusion into Tucker's home. Further, in light of the unusual circumstances of defendant's entry and his conduct within the Tucker premises, the jury had ample evidence to support its finding that defendant had the requisite specific intent. Since the proof of defendant's guilt was overwhelming, any error must be considered harmless and defendant was not deprived of a fair trial thereby *(see, People v Morgan,* 66 NY2d 255, 259; *People v Crimmins,* 36 NY2d 230).

■ Lastly, we note that defendant's conspiracy conviction is independent and can stand alone *(see, People v McGee,* 49 NY2d 48, 57, *cert denied sub nom. Quamina v New York,* 446 US 942). Therefore, contrary to defendant's contention, the conspiracy conviction would not be affected even if the conviction of burglary were reversed.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed.