OPINION OF THE COURT
Rena K. Uviller, J.
Is a defendant guilty of burglary if the purpose of his unlawful entry into premises is to further or prepare for a crime that cannot be, and is not intended to be, consummated inside those premises? New York cases do not address the question.
*976 In the early hours of January 5, 1986, a three-man crew of professional art and antiques thieves broke into the Regency Worldwide Warehouse in Queens. Within the premises they located two crates containing a purportedly multimillion dollar collection of Persian antiquities and removed them from the warehouse, only to fall into the arms of police waiting outside. Subsequently, the owner of the collection, Houshang Mahboubian, a London-based collector and dealer in Mideastern antiquities, and Nedjatollah Sakhai, a New York antiques dealer, were indicted. They were charged with conspiracy, attempted grand larceny from Lloyds of London and, as accomplices to the intruders, with burglary of the warehouse.[1]
The trial evidence adduced that defendants Mahboubian and Sakhai had arranged for the others to break into Regency and stage a bogus theft of the collection so that Mahboubian could fraudulently collect $18.5 million in insurance moneys from Lloyds of London. There was evidence that Sakhai was privy to information about Mahboubian’s shipment of the collection from Zurich and its storage at Regency — information that Sakhai could only have obtained from Mahboubian;[2] tape recordings of Sakhai explaining the job to the break-in trio, including the warehouse security system and the location of Mahboubian’s collection within it; and tapes of Sakhai’s side of long distance telephone calls from which it could be concluded he was discussing the break-in with Mahboubian. There was also considerable evidence that much of the collection was fake; that Mahboubian had been unable to sell it, and that that constituted a motive for overinsuring and staging a theft of it.
At the trial’s conclusion defendants moved for dismissal of the burglary count, contending that there was legally insufficient evidence that the warehouse had been broken into "with intent to commit a crime thérein.” (Penal Law § 140.20.) They argue that the immediate purpose of entry — removal of defen *977 dant Mahboubian’s own property — is not a crime and that the ultimate object crime — larceny from the insurer — could not have been committed inside the warehouse.[3] By their reasoning, it is immaterial that the Regency was unlawfully entered in order to effectuate a subsequent larceny from the insurer. As long as that theft could not be consummated inside the premises there was no crime that they could have intended to commit "therein”.
* * *
In a prosecution for burglary, it is clear that the specific crime the defendant was bent upon within the premises need not be proved, unless the People have alleged or proceeded upon the theory that a specific crime was intended. (People v Mackey, 49 NY2d 274; People v Barnes, 50 NY2d 375.) The law is less explicit in regard to the issue posed by defendants’ motion: Is the criminal intention required by the burglary statute satisfied if the defendant’s ultimate purpose is to commit a crime in another location at a future date.[4]
The "intent to commit a crime therein” that accompanies an unlawful entry is the gravamen of burglary. In assessing whether the intruder or his accomplice has such a purpose, defendants’ distinction between what happens inside the premises and what was to occur outside is an artificial one. It subverts the purpose of the burglary statute and fails to account for the evils the statute was designed to address. Rather, basic principles of criminal liability dictate that the intended course of conduct, inside and out, be viewed in its entirety, as a single criminal enterprise.
Initially, defendants err when they assert that the conduct within the warehouse was not a crime. The defendants’ ultimate criminal objective in London rendered unlawful the preparatory conduct occurring within the warehouse in New *978 York. Conduct that is not itself unlawful may become so as an "anticipatory offense” undertaken to further a criminal objective — anticipatory in the sense that there is an object or substantive crime yet to be committed. (See, Sobel, The Anticipatory Offenses in the New Penal Law, 32 Brooklyn L Rev 257.) Title G of the Penal Law proscribes such anticipatory offenses as criminal solicitation (Penal Law §§ 100.00-100.20), conspiracy (Penal Law §§ 105.00-105.30), attempt (Penal Law §§ 110.00-110.10), and criminal facilitation (Penal Law §§ 115.00-115.15). Each of these offenses involves conduct falling short of a completed crime, but which is independently criminal because the conduct is performed in preparation for the commission of another object crime.
Here, an attempted larceny or attempted insurance fraud within the unlawfully entered premises can be inferred from the conduct at the Regency Warehouse. "A person is guilty of an attempt * * * when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.” (Penal Law § 110.00.) Evidence that an insured has arranged for his own property to be destroyed or "stolen” in preparation for filing a false insurance claim has been held to constitute an attempted insurance fraud. (People v Vastano, 117 AD2d 637; see also, People v Trepanier, 84 AD2d 374.)
Criminal facilitation may also constitute the crime intended within these premises. Generally, the crime of facilitation is invoked when the accused lacks the intentional mens rea required for accessorial liability. The statutory definition of facilitation, however, does not preclude one with the intent to commit the object crime from being charged as a facilitator as well as an accessory.[5] (Sobel, The Anticipatory Offenses in the New Penal Law, 32 Brooklyn L Rev 257, 271.)
The break-in also constitutes an overt act in the crime of conspiracy to steal from Lloyds. A conspiracy, of course, requires proof of the commission of an overt act in furtherance of the conspiracy. (Penal Law § 105.20.) That Sakhai and *979 Mahboubian conspired to steal from Lloyds of London is amply supported by the evidence. The entry into Regency and the removal of the crates was an overt act in furtherance of that conspiracy.
From an entirely different perspective, a criminal purpose within the warehouse may be inferred in that the break-in and removal of the crates were part of the actus reus of the intended larceny from the insurer. That is to say, apart from constituting a variety of discrete, anticipatory crimes, the bogus theft of the collection from the warehouse was one act in a series of acts required before the larceny from Lloyds could be consummated. The break-in and removal of the collection, in other words, constituted a partial performance or an "ingredient act” of the object crime of stealing from Lloyds; the insurance fraud or theft may be deemed to have partially occurred inside the warehouse.
A crime can occur in more than one place; its locus is not limited to the point of consummation. The Criminal Procedure Law provides that the State of New York or a county thereof has jurisdiction over a crime when only part of the conduct constituting the crime occurs there, provided such conduct is of a required nature or degree. (CPL 20.20, 20.40.) Thus, the occurrence of a single element of a crime, not amounting to an anticipatory offense, confers jurisdiction upon a geographical unit. In other words, partial performance of a crime in a particular place can establish its locus.
Nothing in the New York law of burglary precludes either an anticipatory crime, or a partial performance of a crime, from qualifying as the object or intended crime of the unlawful entry. The cases make clear that in a burglary prosecution, the nature of the crime intended inside is as irrelevant as whether or not it was consummated. (People v Mackey, 49 NY2d 274, 279, supra.) Unlike some other jurisdictions and in contrast to the common law, which limit the object crime in burglary to larceny or felonies (see generally, 13 Am Jur 2d, Burglary, § 24; 12A CJS, Burglary, § 40; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 140.20, at 37), our Penal Law requires only that "a crime” be intended. It is not necessary for the People to plead or prove which particular crime the intruder had in mind. (People v Mackey, supra, at 278-280; People v Ivory, 99 AD2d 154.) Nor is it necessary that the intended crime be charged elsewhere in the indictment. (People v Goldsmith, 127 AD2d 293.)
*980 It is less clear whether the intent element of burglary is satisfied when the act the intruder (or his accomplice) intends to commit within the premises is neither an anticipatory crime nor is so inherently a part of a future crime as to constitute an ingredient act of that crime. If, for example, the intruder’s sole purpose is to read his prospective murder victim’s diary in order to learn his whereabouts, has he entered "with the intent to commit a crime therein”? That nice question is not posed here, where the conduct intended within the warehouse constituted several anticipatory offenses and was, as well, an inherent part or an ingredient act of a theft from Lloyds.
By enhancing punishment for an illegal intrusion when accompanied by a criminal purpose, the law recognizes the increased danger posed by such an intruder, as distinguished from a mere trespasser. Because of the enhanced danger, burglary requires only a general criminal mens rea. (People v Mackey, supra, at 279-280.) The Regency break-in team understood they were engaged in a criminal endeavor, however vague the intruders may have been as to the precise objective. They acted with the stealth and preparation appropriate to a criminal enterprise and could have been expected to respond in an appropriately dangerous manner upon interruption or apprehension. If the Penal Law "must be construed according to the fair import of [its] terms to promote justice and effect the objects of the law” (Penal Law § 5.00), these defendants, as accomplices to the intruders, cannot evade liability for burglary upon such clear evidence that the purpose of the entry was to engage in a criminal course of conduct.
Accordingly, the motion to dismiss the burglary count is denied.

. Two members of the break-in team were also indicted: Daniel Kohl and Thomas May pleaded guilty to the Regency burglary, as well as to other, unrelated crimes. The third member of the trio, Daniel Cardebat, was a police informant.

. This information included the mistaken understanding, conveyed to Mahboubian by a warehouse employee, that the collection would be stored in a locked interior vault instead of in the main warehouse area. Based on this misunderstanding, the break-in crew damaged this interior vault in order to get the crates. Accordingly, there was evidence of an intent to commit criminal mischief inside the warehouse, which, quite apart from the issues discussed herein, is dispositive of defendant’s motion.

. It may be unlawful for an owner to steal his own property from a bailee, such as a warehouseman, who has a lien on the goods (People ex rel. Travis v Sheriff of Cortland County, 275 App Div 444).

. People v Haupt (218 App Div 251 [1926]), the only New York case remotely relevant, is not helpful. There the appellate court reversed a conviction for burglarizing a dwelling because the indictment charged and the evidence showed that the defendants’ purpose in entering the dwelling was not to commit a crime there, but rather to steal chattel from an adjacent garage. Here, by contrast, the indictment charges an intent to commit a crime within the entered premises (i.e., the warehouse), and does not specify the crime intended.

. "A person is guilty of criminal facilitation * * * when, believing it is probable that he is rendering aid * * * to a person who intends to commit a crime, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit a felony”. (Penal Law § 115.00.)
Conviction for criminal facilitation requires that the object crime be completed. But inasmuch as the charged crime (burglary) does not require completion of the intended or object crime, it would appear immaterial that the object crime of facilitation was never consummated.