*457
 
 OPINION OF THE COURT
 

 Titone, J.
 

 The narrow issue presented for consideration here is whether defendant was entitled to an order precluding the prosecution from cross-examining him about his prior use of aliases when the defense claimed that there was an alternative explanation for the defendant’s use of aliases that potentially rebutted the inference of dishonesty. Concluding that the probative worth of alias evidence can be adequately assessed by the fact finder in most situations, we decline to impose a legal requirement of preclusion in these circumstances and hold instead that, like many issues involving the proper scope of cross-examination, the prosecution’s use of alias evidence as cross-examination material rests within the sound discretion of the trial court.
 

 I.
 

 Defendant was charged with criminal sale and possession of a controlled substance in the third degree in connection with a November 20, 1990 sale of a quantity of cocaine to an undercover officer. Prior to trial, the court conducted a
 
 Sandoval
 
 hearing at which the prosecutor’s plans to cross-examine defendant about his prior criminal acts were discussed
 
 (see, People v Sandoval,
 
 34 NY2d 371). The prosecutor noted that defendant had previously been convicted of two felonies, one involving a narcotics sale and one involving a robbery. There was also a string of 17 misdemeanor convictions between 1979 and 1989 that the prosecutor wished to raise if defendant chose to testify.
 

 In addition to reviewing defendant’s prior convictions, the parties focused at the
 
 Sandoval
 
 hearing on defendant’s prior use of aliases and other false pedigree information. The prosecutor asserted that defendant had used 14 different names and 5 different dates of birth on the occasions that he had been arrested. Arguing that this use of false information "goes directly to the defendant’s credibility,” the prosecutor asked to be permitted to cross-examine defendant on the subject in the event that he decided to take the witness stand. Anticipating the prosecutor’s request, defense counsel had noted in his opening remarks that defendant is a Muslim and that "that may explain why * * * he used the name of Ali.” Moreover, according to defense counsel, defendant had been using his father’s surname when he told the police in 1982 that his
 
 *458
 
 name was "Alvin Smith.” Finally, defense counsel asserted, defendant had used the name "McDonald” when he "was under the influence of drugs and was not in his right mind.”
 

 After hearing both parties’ arguments, the court ruled that the People would be permitted to question defendant about his use of "numerous aliases” and "various dates of birth.” With regard to the prior felony and misdemeanor convictions, the court held that the People would be able to inquire about their number and dates but would not be permitted to allude to the underlying facts.
 

 Defendant was subsequently tried before a jury. Having elected not to testify, defendant rested his defense on a challenge to the reliability of the People’s witnesses, particularly the undercover officer who had actually purchased the cocaine and identified defendant as the seller. The jury found defendant guilty of criminal sale in the third degree, and defendant was subsequently sentenced to a 6- to 12-year term of imprisonment. On defendant’s appeal, the Appellate Division found no reason to disturb the judgment of conviction, although it noted that the trial court "would have been more circumspect in its
 
 [Sandoval]
 
 obligation” if it had limited the number of prior convictions that the People could use on cross-examination (189 AD2d 620, 621). This appeal, taken by leave of a Judge of this Court, ensued.
 

 II.
 

 Initially, we reject defendant’s contention that the conviction should be overturned because the trial court failed properly to balance the
 
 Sandoval
 
 factors in deciding to permit cross-examination with respect to each of defendant’s 19 prior convictions. While, as the Appellate Division noted, the trial court might have been more discriminating, we find no legal reason to upset the court’s exercise of its discretion
 
 (see, People v Mackey, 49
 
 NY2d 274, 281).
 

 In this regard, it must be stressed that "in the usual case, appellate review of the exercise of discretion by the trial court * * * ends in the intermediate appellate court”
 
 (People v Pollock,
 
 50 NY2d 547, 550, citing
 
 People v Mackey, supra,
 
 at 281). The use of prior bad acts for impeachment of a testifying defendant "is 'largely, if not completely’ a discretionary determination for the trial courts and fact-reviewing intermediate appellate courts, and * * * generally no further review by this Court is warranted”
 
 (People v Mattiace,
 
 77 NY2d 269, 274,
 
 *459
 
 quoting
 
 People v Shields,
 
 46 NY2d 764, 765;
 
 see, People v Pollock, supra,
 
 at 550;
 
 People v Brown,
 
 48 NY2d 921). Because the trial courts have inherent power to control the scope of cross-examination and the use of prior bad acts is a generically accepted practice in that context, this Court will intervene only where "the trial court ha[s] either abused its discretion or exercised none at all”
 
 (People v Williams,
 
 56 NY2d 236, 238;
 
 see, People v Canty,
 
 60 NY2d 830, 831).
 

 Here, the record does not indicate a failure by the trial court to balance the relevant factors. To the contrary, the court’s decision, which permitted inquiry about each of defendant’s prior convictions but forbade reference to the underlying criminal acts, reflects sensitivity to the particular prejudice that may result when a jury is made aware of the fact that the defendant has previously committed crimes that are similar to the charged crime
 
 (see, People v Smith,
 
 59 NY2d 156, 168;
 
 see also, People v Pollock, supra,
 
 at 550-551 [Meyer, J., dissenting] ["thrust of
 
 Sandoval
 
 is that * * * a jury may be led by such evidence (of prior crimes) to infer criminal propensity”]).
 

 That the number of prior convictions ruled admissible was large and that some of those prior convictions were remote in time are matters of substance that may properly be considered by the trial court but are not appropriate bases for this Court to second-guess the trial court’s conclusion
 
 (see, People v Patterson,
 
 88 AD2d 694,
 
 affd
 
 59 NY2d 794). Our law does not require "the application of any particular balancing process” in
 
 Sandoval
 
 determinations
 
 (People v Pollock, supra,
 
 at 550), and there are no per se rules requiring preclusion because of the age, nature and number of a defendant’s prior crimes
 
 (see, People v Pavao,
 
 59 NY2d 282, 292;
 
 People v Bennette, 56
 
 NY2d 142, 147;
 
 People v Mackey, supra).
 
 Similarly, an exercise of a trial court’s
 
 Sandoval
 
 discretion should not be disturbed merely because the court did not provide a detailed recitation of its underlying reasoning
 
 (see, People v Ellis,
 
 183 AD2d 534, 535,
 
 affd
 
 81 NY2d 854), particularly where, as here, the basis of the court’s decision may be inferred from the parties’ arguments
 
 (see, People v Burke,
 
 39 NY2d 729, 730-731).
 

 Distilled to its essentials, defendant’s present appellate claim is really nothing more than a disagreement with the ultimate outcome of the trial court’s discretionary balancing determination. Such a disagreement does not furnish a cognizable ground for intervention by this Court, which is limited
 
 *460
 
 to resolving questions of law
 
 (see,
 
 CPL 470.35 [2]). Accordingly, the only remaining question with regard to the propriety of the trial court’s
 
 Sandoval
 
 ruling is whether the court erred in holding that the People could cross-examine defendant about his prior use of aliases despite defense counsel’s representations that there were alternative, arguably innocent explanations for several of the incidents in question. It is to that question that we now turn our attention.
 

 III.
 

 The question of using alias evidence as a basis for cross-examining a testifying defendant has been referred to in a series of Appellate Division decisions. In most of the cases, the intermediate appellate courts have merely set forth the commonsense proposition that the People cannot ask about aliases used by a defendant in such a way as to suggest the existence of a prior arrest when the trial court has previously precluded all reference to the crime associated with that arrest
 
 (People v Esquilin,
 
 141 AD2d 838;
 
 People v Spivey,
 
 125 AD2d 349;
 
 People v Walker,
 
 119 AD2d 521, 523;
 
 People v Bannerman,
 
 110 AD2d 706;
 
 People v Evans,
 
 88 AD2d 604;
 
 People v Dowdell,
 
 88 AD2d 239, 243-244). These cases rest on the unexceptional premise that prosecutorial evasions of the trial court’s
 
 Sandoval
 
 ruling are improper
 
 (see, e.g., People v Dowdell, supra,
 
 at 243-244;
 
 People v Bannerman, supra,
 
 at 707).
 

 The foregoing line of cases, however, provides no comfort for this defendant, who obtained a wholly unfavorable
 
 Sandoval
 
 ruling. Accordingly, on this appeal, defendant has invoked a different line of cases from the Second Department which suggests a much broader rule: i.e., that a defendant’s use of aliases on "prior [occasions] unrelated to the [case on trial]” is not a proper subject for impeachment at all
 
 (People v High-tower,
 
 163 AD2d 489;
 
 People v Smith,
 
 138 AD2d 759;
 
 People v Malphurs, 111
 
 AD2d 266, 269;
 
 People v Jimenez,
 
 79 AD2d 1012, 1013,
 
 mod on other grounds
 
 55 NY2d 895;
 
 but see, People v Greer,
 
 181 AD2d 422 [1st Dept];
 
 People v Rivera,
 
 180 AD2d 560 [1st Dept];
 
 People v Bost,
 
 176 AD2d 1085 [3d Dept];
 
 People v Roberts,
 
 163 AD2d 120, 121 [1st Dept] [all upholding use of alias evidence for cross-examination]). While defendant does not necessarily ask us to
 
 go
 
 so far, he does advocate adoption of a rule that would forbid impeachment through prior incidents of alias use unless the prosecution makes a specific showing that such incidents "bear demonstrably on [the]
 
 *461
 
 defendant’s credibility as a witness” in the particular case. In essence, defendant is asking us to require a special preliminary inquest into the underlying facts whenever the People seek to use alias evidence for impeachment purposes. For the reasons that follow, we decline to adopt defendant’s view or to fashion a special rule for alias evidence premised on the assumption that such evidence is inherently suspect.
 

 Preliminarily, we note that there was no mention at trial of a need for a special inquest or a particularized showing of relevance by the prosecution. Instead, there was, at most, a contention by defense counsel that any cross-examination as to prior alias use should be limited because there was an arguably innocent reason for defendant’s use of a different name on three of the relevant occasions. Thus, the only preserved question before us is whether the trial court erred as a matter of law in rebuffing defense counsel’s assertions as a ground for forbidding cross-examination with regard to some of the incidents in which defendant had used "aliases.”
 

 To answer this question, we begin with the elementary premise that impeachment is a particular form of cross-examination whose purpose is, in part, to discredit the witness and to persuade the fact finder that the witness is not being truthful
 
 (see generally,
 
 Fisch, New York Evidence § 447 [2d ed]). One traditional method of accomplishing these ends is to demonstrate through questioning that the witness has been guilty of prior immoral, vicious or criminal conduct bearing on credibility
 
 (id.,
 
 § 455;
 
 see, e.g., People v Schwartzman,
 
 24 NY2d 241, 244,
 
 cert denied
 
 396 US 846;
 
 People v Webster,
 
 139 NY 73). Such cross-examination is not limited to questions about prior crimes or like misconduct. Rather, even where the proof "fall[s] outside the conventional category of immoral, vicious or criminal acts,” it may be a proper subject for impeachment questioning where it demonstrates an untruthful bent or " 'significantly reveal[s] a willingness or disposition on the part of the particular defendant voluntarily to place the advancement of his individual self-interest ahead of principle or of the interests of society’ ”
 
 (People v Coleman,
 
 56 NY2d 269, 273, quoting
 
 People v Sandoval, supra,
 
 at 377).
 

 Manifestly, a suspect’s use of a false name or other inaccurate pedigree information is an indication of dishonesty that goes to the very heart of the question of that individual’s testimonial credibility. Giving false pedigree information in situations where one is called upon to be truthful is, by
 
 *462
 
 definition, an act of prevarication. Common sense suggests that individuals who give false information in such situations are usually motivated by a desire to gain some unwarranted benefit or to avoid some deserved penalty or liability
 
 (see, People v Colmey,
 
 117 App Div 462, 465,
 
 affd
 
 188 NY 573). Arrested individuals who use aliases, for example, often do so for the purpose of evading prosecution. As a matter of reason and common experience, it is certainly fair to infer that a person who has used an alias when asked about his or her real identity has demonstrated a willingness to place his or her individual self-interest ahead of principle or the interests of society
 
 (see, People v Coleman, supra,
 
 at 273, quoting
 
 People v Sandoval, supra,
 
 at 377). Accordingly, such evidence is generally "both relevant and material to the credibility, veracity and honesty” of the witness and is a therefore a proper subject for cross-examination
 
 (People v Coleman, supra,
 
 at 273).
 

 To be sure, as defendant contends, there are situations in which the use of a name other than one’s accustomed appellation is not indicative of deliberate dishonesty. Converts to particular religion, for example, sometimes adopt new names to reflect their new affiliation and beliefs. Married women often assume their husband’s surname or join it with a hyphen to their own surnames. Additionally, some women who have previously used their husbands’ surnames elect to resume the use of their premarital names for personal reasons having nothing to do with a desire to deceive or evade responsibility. Finally, there are situations in which confusion within the criminal justice system itself can make it appear that an individual is using an alias when, in fact, the individual is being truthful. Mistakes concerning the spelling or correct order of a foreign name can lead to errors in the records which, in turn, can create the false impression that a rearrested suspect is using an "alias”.
 

 The existence of these potential "innocent” explanations for a name discrepancy, however, is not a sufficient basis to treat alias evidence differently or to carve out a special exception to the general rule that the nature and extent of cross-examination are matters that are entrusted to the sound discretion of the trial court
 
 (People v Schwartzman, supra,
 
 at 244;
 
 People v Sorge,
 
 301 NY 198, 201-202). Whether a particular discrepancy in the name an arrested individual has given is indicative of dishonesty or is instead the product of some other noncorrupt circumstance is a question that the trier of
 
 *463
 
 fact can readily resolve as part of its over-all function to weigh the evidence and resolve credibility issues. In this regard, alias evidence is no different from any other factual information elicited in an effort to impeach a witness’s credibility. Like any other form of impeachment evidence, the probative worth of this class of evidence may effectively be challenged through such conventional methods as explanation and rehabilitation
 
 (see generally,
 
 Fisch,
 
 op. cit.,
 
 § 495). Once all of the evidence is placed before the fact finder,
 
 [1]
 
 the truth-seeking process itself can be trusted to sort out the relevant variables and arrive at the proper conclusion.
 

 In concluding that there is no need for a special rule to govern the use of alias evidence for impeachment, we note that, unlike prior crime evidence, there is nothing inherent in alias evidence that suggests a need for extraordinary caution. Evidence that a defendant has previously committed or been convicted of a crime can be highly prejudicial because of the risk that the jury will use it to infer criminal propensity
 
 (People v Sandoval, supra,
 
 at 377;
 
 accord, People v McGee,
 
 68 NY2d 328, 333;
 
 People v Pollock, supra,
 
 at 550-551 [Meyer, J., dissenting]). In contrast, alias evidence carries no additional implication other than the natural one of propensity for untruthfulness (provided, of course, that it is not used in such a way as to suggest the existence of otherwise unadmitted prior encounters with law enforcement authorities). Hence, there is no
 
 undue
 
 prejudice; there is only the expected — and, indeed, intended — negative impact that naturally flows from evidence admitted for the purpose of impeachment. Accordingly, no specialized treatment is required beyond the ordinary principles of common sense and fairness that typically inform trial court discretion
 
 (see generally, People v McGee, supra; People v Allen,
 
 50 NY2d 898 [holding
 
 Sandoval
 
 procedure inapplicable to cross-examination of witnesses other than defendant];
 
 cf., People v Conyers,
 
 52 NY2d 454;
 
 People v Dawson,
 
 50 NY2d 311;
 
 People v Allweiss,
 
 48 NY2d 40 [all precluding or limiting use of otherwise probative evidence because of potential for undue prejudice];
 
 see also, People v Ventimiglia,
 
 52 NY2d 350;
 
 People v Sandoval, supra
 
 [estab
 
 *464
 
 lishing procedure for advance ruling on admissibility of evidence carrying particular potential for prejudice]).
 
 [2]
 

 Application of these principles to the present case leads inevitably to affirmance. Defense counsel’s assertions about the potentially "innocent” explanations for defendant’s prior use of false names and birthdates were highly speculative and, in any event, did not suggest a legal reason to mandate preclusion. The facts that one of the so-called "aliases” may have been defendant’s Muslim name, that another was defendant’s father’s name and that a third was given to police when defendant was in a state of drug-induced confusion may have affected the value of the incidents as indicia of untruthfulness. However, those facts did not render the evidence inadmissible as a matter of law. It thus cannot be said that the trial court exceeded or abused its discretionary authority over the nature and extent of cross-examination when it determined that the prosecution could cross-examine defendant regarding his prior use of aliases and other false pedigree information
 
 (see
 
 generally,
 
 People v Schwartzman, supra).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 [1]
 

 . We assume that, upon request and a proper offer of proof by the defense, the trial court will ordinarily exercise its discretion in favor of permitting a cross-examined defendant to explain his or her prior use of an alias
 
 (see, Fisch, op. cit.,
 
 § 495 ["A witness whose credibility has been attacked may be rehabilitated (and t)he manner in which this can be done varies with, and is determined by, the form of the discrediting evidence”]).
 

 [2]
 

 . Inasmuch as both parties in this case chose to litigate the question of the admissibility of the alias evidence within the context of the
 
 Sandoval
 
 hearing, we have no occasion to consider whether a similar procedure is mandatory in all cases
 
 (cf., People v Kennedy,
 
 47 NY2d 196, 205). We note, however, that there are a number of pragmatic benefits to be derived from airing the issue of alias evidence during the
 
 Sandoval
 
 hearing, most notably the opportunity to review the defendant’s entire "rap” sheet and to correlate the incidents of alias use with the prior convictions to ensure that only aliases associated with
 
 admissible
 
 prior crimes are used for impeachment
 
 (see, People v Bannerman, supra).
 
 Additionally, such procedure minimizes the surprise factor and enables the defendant to make an informed choice as to whether to testify.