84 N.Y.2d 709 (1995)
646 N.E.2d 444
622 N.Y.S.2d 223
The People of the State of New York, Respondent,
v.
Ernest Gray, Appellant.
Court of Appeals of the State of New York.
Argued December 1, 1994.
Decided January 10, 1995.
Hoffinger Friedland Dobrish Bernfeld & Stern, P. C., New York City (Vivian Berger of counsel), and Ira Mickenberg, for appellant.
Robert M. Morgenthau, District Attorney of New York County, New York City (Donna Krone, Robert M. Raciti and Ilisa T. Fleischer of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS and SMITH concur with Judge CIPARICK; Judge LEVINE concurs in result in a separate opinion in which Judges TITONE and BELLACOSA concur.
*711 CIPARICK, J.
May defendant's previous conviction of a felony in Maryland when he was 15 years old constitute cross-examination material at his New York murder and robbery trial even though the Maryland conviction would have resulted in a juvenile delinquency adjudication in New York? We hold that the trial courts' traditional, broad Sandoval discretion controls this question and decline to adopt a per se rule automatically excluding the out-of-State conviction.
Around 2:30 A.M. on July 12, 1990, a police officer discovered the body of Harry Rhodes slumped over the steering wheel of his truck parked outside a beer distributor's warehouse in upper Manhattan. Rhodes had been shot to death. The door at the rear of the truck was open and the driver's side window was broken. Inside, the glove compartment was open and papers were strewn across the floor of the cab and the passenger seat. A wallet and personal documents belonging to Rhodes were found under the stairwell of a nearby building.
The following day, defendant and five others were arrested in connection with the murder and robbery. Defendant gave a written statement to a detective and made a second, videotaped statement to an Assistant District Attorney. In both statements defendant admitted to participating in the robbery of Rhodes.
Defendant made a pretrial Sandoval motion to preclude the People from using his prior convictions to impeach his credibility in the event he testified in his own behalf (see, People v Sandoval, 34 N.Y.2d 371). The motion was addressed to a 1990 misdemeanor conviction in New York for criminal trespass and a 1989 Maryland felony conviction for cocaine trafficking when defendant was 15 years old. The trial court denied the motion in its entirety.[*] Defendant did not testify at trial and was convicted of murder in the second degree, two counts of burglary in the second degree, and criminal possession of a weapon in the second degree. The Appellate Division affirmed.
On this appeal, defendant argues that the Legislature has *712 evinced a strong policy in favor of protecting youths under 16 from acquiring criminal status for nonviolent crimes and that deference to that policy requires elimination of the trial court's traditional Sandoval discretion in favor of a per se rule precluding use of prior criminal convictions from foreign jurisdictions where, as here, the underlying acts would not be adjudicated crimes if committed in this State.
A criminal defendant who chooses to testify may be cross-examined concerning prior criminal, vicious or immoral acts that bear logically on that individual's credibility as a witness (see, People v Sandoval, 34 N.Y.2d 371, 374, supra). Use of prior criminal convictions and bad acts to impeach a testifying defendant "is largely, if not completely, a matter of discretion which rests with the trial courts and fact-reviewing intermediate appellate courts" (People v Shields, 46 N.Y.2d 764, 765). It is, however, impermissible to use a youthful offender or juvenile delinquency adjudication as an impeachment weapon, because "these adjudications are not convictions of a crime" (Richardson, Evidence § 506, at 494 [Prince 10th ed]; see, Family Ct Act § 301.2 [1]; Penal Law § 30.00). Nevertheless, the cross-examiner may bring out "the illegal or immoral acts underlying such adjudications" (People v Greer, 42 N.Y.2d 170, 176).
Recently, we stated of the admissibility of prior convictions, that "[o]ur law does not require `the application of any particular balancing process' in Sandoval determinations * * * and there are no per se rules requiring preclusion because of the age, nature and number of a defendant's prior crimes" (People v Walker, 83 N.Y.2d 455, 459, quoting People v Pollock, 50 N.Y.2d 547, 550; see, People v Mattiace, 77 N.Y.2d 269, 275). "Because the trial courts have inherent power to control the scope of cross-examination and the use of prior bad acts is a generically accepted practice in that context, this Court will intervene only where `the trial court ha[s] either abused its discretion or exercised none at all'" (People v Walker, 83 N.Y.2d 455, 459, supra, quoting People v Williams, 56 N.Y.2d 236, 238).
Indeed, in People v Mackey (49 N.Y.2d 274, 281), we declined to hold that the trial court abused its discretion in permitting cross-examination of the defendant on petit larceny and disorderly conduct convictions that occurred when the defendant was 13 years old. As defendant candidly concedes, the convictions in Mackey must necessarily have been foreign since they *713 postdated the Family Court Act. In People v Peele (12 N.Y.2d 890, 891), we held that the trial court did not commit reversible error when it permitted the prosecutor to question the defendant concerning a Virginia juvenile delinquency adjudication, "since the prosecutor in good faith believed that there had been a criminal conviction." A criminal conviction in a foreign jurisdiction may be used against a defendant testifying in this State if the act or acts constituted a crime in that jurisdiction (see, People v Rivera, 100 AD2d 914, 915; People v Brown, 2 AD2d 202, 203-204).
Defendant is correct in arguing that the Legislature has sought to protect young persons who have violated the criminal statutes of this State from acquiring the stigma that accompanies a criminal conviction (see, Family Ct Act § 381.2 et seq.). However, New York's governmental interest in the adjudication of criminal acts which take place outside the State is much less compelling and hardly requires the automatic override of another jurisdiction's treatment of the problem of youth crime or elimination of our well-established, workable Sandoval rules.
In People v Kuey (83 N.Y.2d 278), we considered a similar problem in the context of enhanced sentencing. We held that New York courts may defer to the policies of the jurisdiction in which the misconduct occurred, and use Florida youthful offender convictions as a predicate for enhanced sentencing purposes even though New York would expunge such convictions and prohibit their use as predicates in sentencing. Having determined in Kuey that New York courts "may give equal force" to Florida's "significantly different" treatment of youthful offenders  even though less protective than our own  we discern no compelling reason to adopt a different rule here, where the foreign conviction is being used solely for impeachment rather than enhanced punishment (id., at 285 [emphasis added]). Indeed, in this State, inquiry into the actual nature of the acts constituting the basis for the youthful offender or juvenile delinquency adjudication is permitted, and a defendant can even be impeached with prior bad acts that did not result in a criminal charge (see, Sandoval, 34 NY2d, at 374, supra).
This is not to say that in every case involving an out-of-State criminal conviction there must be deference to the foreign jurisdiction's juvenile justice policies. We hold only that the matter remains within the sound discretion of the *714 hearing court, which should be sensitive to the differences between the juvenile justice policies of this State and the foreign State.
In conclusion, we find the rationale of the defendant and concurring opinion unpersuasive and decline to adopt a per se rule automatically excluding as cross-examination material any and all foreign criminal convictions involving acts that, if committed in this State, would result in youthful offender or juvenile delinquency treatment. The use of prior convictions for impeachment purposes is a matter resting "largely, if not completely", within the sound discretion of the trial courts (Shields, 46 NY2d, at 765, supra). We find no abuse of such discretion here as a matter of law.
We have considered defendant's remaining contention and find that it is without merit.
Accordingly, the order of the Appellate Division should be affirmed.
LEVINE, J. (concurring).
Since 1909, the undeviating law and policy of this State has been to protect youths under the age of 16 who commit nonviolent acts from acquiring criminal status and its accompanying disabilities[*]  including impeachment on credibility in subsequent proceedings based upon juvenile delinquency adjudications arising from those acts. Despite the broad discretion which we have accorded trial courts in Sandoval determinations generally, it is absolutely clear that if defendant had committed in New York the act which gave rise to his criminal conviction in Maryland, it would have been error as a matter of law for the trial court to have exercised its "discretion" to permit cross-examination of defendant on the adjudication of juvenile delinquency that may have resulted. In my view, appropriate deference to this long-standing policy and due regard for fairness and consistency in the administration of the law mandates also precluding, as a matter of law, impeachment of a testifying defendant on the basis of a sister State conviction premised upon a *715 youthful act which, had it occurred in New York, could not have been the basis of a criminal conviction nor the subject of credibility impeachment in this State.
There is no dispute here concerning the controlling law if defendant had committed in New York at age 15 the nonviolent act underlying the Maryland conviction sought to be utilized for impeachment here. Under New York law, defendant's commission of the subject drug offense would have fallen within the exclusive jurisdiction of the Family Court (Family Ct Act § 301.2 [1]), and would have exposed him, at worst, to a finding of juvenile delinquency (Family Ct Act § 352.1 [1]). It is further uncontestable that defendant could not have acquired a criminal record as a result of that adjudication, as the governing statute makes perfectly clear that "[n]o adjudication under this article may be denominated a conviction and no person adjudicated a juvenile delinquent shall be denominated a criminal by reason of such adjudication" (Family Ct Act § 380.1 [1]).
In addition to the fact that the status of a criminal conviction would not have attached to the adjudication, Family Court Act § 381.2 (1) further provides that:
"Neither the fact that a person was before the family court under this article for a hearing nor any confession, admission or statement made by him to the court or to any officer thereof in any stage of the proceeding is admissible as evidence against him or his interests in any other court."
Accordingly, as the majority acknowledges, it is settled that a juvenile delinquency adjudication itself may under no circumstances be utilized to impeach a testifying defendant's credibility in a subsequent criminal proceeding (see, People v Greer, 42 N.Y.2d 170, 176; Richardson, Evidence § 506, at 494 [Prince 10th ed]).
The policy underlying the foregoing is not difficult to discern. "The historic purpose of the juvenile justice system has been the rehabilitation of children" (Sobie, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 263; see also, 1 Kerschensteiner, Callaghan's Family Court Law and Practice in New York § 9:01, at 6 ["treatment and rehabilitation (are) the ultimate goals" of juvenile delinquency proceedings]). The statutory scheme clearly reflects the Legislature's considered judgment that children are not fully responsible for every antisocial act they commit, and that it is *716 counterproductive to their development as responsible citizens to attach a criminal conviction, with its attendant stigma and practical consequences, to nonviolent acts which may result in many cases solely from immaturity or environment.
The issue before this Court then, is whether the result should be different because of the fortuity that defendant's prior act was committed in a State which treats youths in a more draconian fashion than in New York. To be sure, the New York Legislature has not expressly barred cross-examination on such an extraterritorial conviction, as it has for New York Family Court adjudications. Nevertheless, we are not operating in a vacuum; the Legislature has spoken on the collateral effects of juvenile delinquency determinations in our State and has proscribed their use in subsequent proceedings. As we have stated:
"The public policy of the State is what the Legislature says it is, where the Legislature has spoken, and a policy so declared sometimes has to be followed by the courts in areas beyond the express reach of the statute for the sake of consistency in the administration of the law" (Matter of Steinberg v Steinberg, 18 N.Y.2d 492, 497).
In accord with this principle, I conclude that, informed by the discernable policy determinations of our Legislature on this issue, barring cross-examination here is necessary "for the sake of consistency in the administration of [Sandoval] law" (id.).
The practical application of the majority's holding today introduces a regrettable inconsistency into the Sandoval doctrine. Thus, two different defendants choosing to testify in a New York State criminal court may be subject to differing impeachment regarding adjudications arising from youthful acts, dependent solely on the locality where the prior act was committed. Surely, the probative and prejudicial natures of the adjudications, the traditional inquiries under Sandoval, do not usually differ because of the locus of the underlying act. Yet, as a result of this decision, a defendant who happened to commit the act as a youth in New York will be shielded as matter of law from impeachment, but the defendant who committed the act without the State may not. Such potential for disparate results is not jurisprudentially sound. Far from *717 advocating the "automatic overrid[ing] of another jurisdiction's treatment of the problem of youth crime or elimination of our well-established, workable Sandoval rules" (majority opn, at 713), I would merely rule for consistency in an area where the Legislature and this Court have already overridden use of certain adjudications for impeachment.
Furthermore, nothing in People v Kuey (83 N.Y.2d 278) compels the majority's result in the instant case. In Kuey, this Court held that it was proper to utilize a Florida youthful offender conviction as a predicate felony in New York  where Florida allowed its youthful offender convictions to serve as predicate offenses in its enhanced sentencing scheme  notwithstanding that defendant might have been granted youthful offender status had he committed the act in New York, in which case the conviction could not be so used. Because the decision to grant youthful offender status was discretionary in both States (id., at 284), the use of the conviction as a predicate did not impinge on any policy of this State. Kuey did not deal with an analogous situation to the instant case, for instance, if a sister State allowed for use as a predicate offense a conviction based on conduct that could only have been the basis for a juvenile delinquency adjudication in New York. I do not believe that any reading of Kuey would support the use of such a conviction as a predicate offense in this State.
Thus, the trial court erred as a matter of law in its Sandoval ruling. This Court has previously held, however, that errors in Sandoval determinations are subject to harmless error analysis, and I conclude that the error must be deemed harmless on this record (see, People v Shields, 46 N.Y.2d 764, 765; see also, People v Williams, 56 N.Y.2d 236, 240-241). The evidence against defendant, including his written and videotaped confessions to police, was overwhelming and there is no significant probability that he would have been acquitted if the error had not occurred and defendant had consequently chosen to testify (People v Crimmins, 36 N.Y.2d 230, 242).
Order affirmed.
NOTES
[*] Although the Appellate Division concluded that "the court did not permit use of the [Maryland] conviction itself for purposes of impeachment" (198 AD2d 3, 4), examination of the record indicates that the trial court later made a clarification of its original ambiguous Sandoval ruling, stating: "It's the conviction and underlying circumstances with regard to the Baltimore felony."
[*] Chapter 478 of the Laws of 1909, amending former Penal Law § 2186, provided: "A child of more than seven and less than sixteen years of age, who shall commit any act or omission which, if committed by an adult, would be a crime not punishable by death or life imprisonment, shall not be deemed guilty of any crime, but of juvenile delinquency only".

The present Penal Law provides, for nonviolent offenses, that "a person less than sixteen years old is not criminally responsible for conduct" (Penal Law § 30.00 [1]).