Timothy Lanier was convicted in the Circuit Court of Jefferson County of two counts of burglary in the first degree. He was sentenced to life in prison for the first count and to 99 years for the second count. Lanier raises the following issues on appeal: (1) Whether the trial court erred in denying Lanier's motion for a judgment of acquittal as to both counts of burglary; and (2) whether the trial court erred in denying Lanier's requested jury charge on criminal trespass in the first degree.
 Facts
The facts of this case involve two burglary charges. The second burglary charge (hereinafter referred to as the "Lawson burglary") relates to a breaking and entering that occurred while the suspects from the first burglary (hereinafter referred to as the "Jennings burglary") were fleeing from the police. The pertinent facts are as follows. On January 12, 1995, Officer Derwin A. Tolbert with the Birmingham *Page 933 
Police Department responded to a call reporting a burglary in progress at the home of Mary and Buford Jennings. (R. 45, 89.) Mrs. Jennings had arrived home to find her burglar alarm broken, telephone lines that had been cut, and certain items in the house in disarray, including suitcases packed with her household belongings. (R. 150, 161.) The point of entry for the burglars was the back door, as evidenced by pry marks on that door. (R. 160.) When Officer Tolbert arrived on the scene in response to Mrs. Jennings's call, he approached the Jennings house and heard movement inside. (R. 49.) He then heard what sounded to him like a chain-link fence rattling behind the house, and when he looked, he saw three black men jump over the fence and run away from the house. One of the men was carrying something, but it was not specifically identified. (R. 49, 40, 96, 100, 129-30.)
Tolbert first saw Lanier as Lanier was running to jump over the fence. (R. 101.) He pursued the three men in his patrol car. Lanier and another of the men eventually got into and drove away in a Ford Explorer sport utility vehicle. (R. 49, 138.) Another officer, Sylvester Giles, began chasing the third man on foot through an alley, and Tolbert eventually assisted in the chase on foot. (R. 50.) The officers recovered items that had been discarded by the man, including a pair of jeans and a 9mm gun, both of which were identified by Mary Jennings as belonging to her husband, and a .380 pistol. (R. 53, 129.)
A third officer driving a police car, Theodis Cady, pursued the two men in the Explorer. (R 143.) During the chase, the men were shooting at Officer Cady. Cady chased them until they entered a neighborhood. He ended the pursuit when he could no longer see — broken glass from his bullet-shattered windshield had gotten in his eyes. (R. 464.)
A detective on bicycle patrol who had heard over his radio about the high-speed pursuit arrived in the neighborhood to find the Explorer empty. The detective began searching for the men; during his search, he found a jacket, some guns, and a pair of gloves. (R. 412-13.) He proceeded through an alley where he found a mark in some grass where someone had slipped; that mark led him to a basement door that had been "knocked open," and he called for backup. (R. 414.) The house belonged to Theo and Sherry Lawson. The detective went into the basement and found Lanier crouched under a shelf. When the detective attempted to handcuff Lanier, he fell, Lanier grabbed his gun, pointed it at the detective's head, and instructed the detective not to move. The two wrestled over the gun, and another person placed his hand over the detective's mouth. (R. 415-16.) Lanier eventually escaped from the basement, and the detective regained control of his gun. He held the two other men, Thomas Lee Terry and Lindsey Earl Slaughter III, at gunpoint until backup arrived. (R. 417.)
A detective interviewed Terry later that day, and he told the detective that he and Lanier had used a gun that they had stolen from the Jennings home to shoot at Officer Cady. (R. 455.) Lanier was subsequently convicted of two counts of burglary in the first degree: one conviction for the burglary at the Jennings house and the other for the burglary at the Lawson house.
 I.
Lanier contends that the trial court should have granted his motion for a judgment of acquittal because, he says, the State failed to present sufficient evidence. Specifically, Lanier argues (1) that the State failed to prove that Lanier was involved in the Jennings burglary, and (2) that the State failed to prove that Lanier had the necessary intent to commit a felony when he entered the basement of the Lawson house. Because we must remand the cause as to the Lawson burglary charged in Count II of the indictment, we will address only the issue regarding the sufficiency of the evidence to support a *Page 934 
conviction in the Jennings burglary, as charged in Count I.
Upon review of a trial court's denial of a motion for a judgment of acquittal, "this court must determine whether any evidence was presented to the trial court when the motion was made that tended to point to the accused's guilt." Sartin v. State, 601 So.2d 1142, 1144 (Ala.Cr.App. 1992). In making this determination, "the State's evidence must be received as true[,] . . . viewed in a light that is most favorable to the State[, and] . . . the State must be accorded all legitimate inferences arising from the evidence presented." Id. Moreover, "[c]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused." K.J. v. State, 690 So.2d 541, 545 (Ala.Cr.App. 1997); Andrews v. State, 437 So.2d 661 (Ala.Cr.App. 1983). Insufficient evidence will not be the ground for setting aside a judgment of conviction unless, "allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the judgment is so decided as to clearly convince the reviewing court that it was wrong and unjust." Jackson v. State, 516 So.2d 726,753 (Ala.Cr.App. 1985).
Lanier contends that his conviction for the Jennings burglary was unsupported by the evidence because, he says, the State did not "connect" him with the items removed from the Jennings home. (Appellant's brief, p. 13.) Section 13A-7-5(a), Ala. Code 1975, provides:
 "A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate flight therefrom, he or another participant in the crime:
 (1) Is armed with explosives or a deadly weapon."
The State made a prima facie showing that Lanier was guilty of burglary in the first degree as to the Jennings burglary. Even though there was no direct evidence that Lanier entered the Jennings home, the State presented circumstantial evidence from which the jury could infer that Lanier had burglarized the Jennings home.
The State introduced evidence showing that Mrs. Jennings telephoned the police when she noticed that her burglar alarm had been broken and when she saw that many of her belongings had been packed into suitcases. Tolbert, the police officer who initially responded to the call, was immediately dispatched to the Jennings home after receiving a call that there was a possible burglary in progress. When he approached the house, he heard noise inside. Immediately thereafter, he heard a chain-link fence rattling, and he saw Lanier and two other men, Terry and Slaughter, fleeing from the backyard of the Jennings home. Tolbert pursued the three men in his patrol car until two of them, Lanier and Terry, entered an Explorer sport utility vehicle. Either Lanier or Terry fired shots at another police officer who was chasing them in his police car. Tolbert then began chasing Slaughter on foot down an alley while Cady, another police officer, pursued Lanier and Terry in his patrol car. Tolbert chased Slaughter through an alley, and Slaughter discarded certain items as he ran. A .380 pistol and a pair of jeans and a 9mm pistol belonging to Mr. Jennings were recovered from the alley. The door to the Jennings house had marks on it indicating the door had been pried open. During his search for Lanier and Terry, a detective on bicycle patrol found a jacket, guns, and gloves. He noticed a mark in the grass where someone had slipped and an open basement door. He went into the basement and found Lanier, Terry, and Slaughter. While the detective was trying to handcuff Lanier, Lanier took the officer's gun from him and held it to the officer's head. Either Terry or Slaughter placed his hand over the officer's mouth, and Lanier escaped. The police officers who had been involved in the *Page 935 
pursuit of Lanier and the detective who found Lanier in the basement identified Lanier in court. (R. 52, 129, 415).
To establish a prima facie case of burglary in the first degree as to the Jennings house, the State must show (1) that Lanier knowingly and unlawfully entered the Jennings house; (2) that Lanier entered the Jennings house with the intent to commit a crime; and (3) that one of the participants was armed with a deadly weapon. See § 13A-7-5(a), Ala. Code 1975. The State met this burden. While the first officer responding to the call did not actually see Lanier inside the Jennings house, the jury could have reasonably inferred from the evidence presented that Lanier had indeed knowingly and unlawfully entered the Jennings house. Immediately after the officer heard noises inside the Jennings house, he saw Lanier jumping the fence in the backyard. If Lanier entered the Jennings house, the entry was unlawful. The pry marks were evidence of a breaking. The intent to take items from the house can be inferred from the circumstances. The burglar alarm had been broken, and the Jennings house had been ransacked. Items belonging to Mr. Jennings were found by the police during their pursuit. To satisfy the elements of burglary in the first degree, it is only necessary that one participant in a burglary be armed. Slaughter was armed with a gun when he was fleeing. In addition, either Terry or Lanier was also armed during the car chase — shots were fired at Officer Cady while he was pursuing the vehicle they were driving. Thus, at least two of the participants in the burglaries were armed, satisfying the elements of § 13A-7-5(a), Ala. Code 1975. The State fulfilled its burden of establishing a prima facie case of burglary in the first degree. The conviction and sentence as to Count I are affirmed.
 II.
Though it was not raised in Lanier's brief to this court, our review of the record has revealed a jurisdictional defect in Count II of the indictment. This court can review a jurisdictional issue at any time, even if the issue is not raised by the appellant. See Nunn v. Baker, 518 So.2d 711, 712 (Ala. 1987); Cole v. State, 435 So.2d 231, 233 (Ala.Cr.App. 1983) (holding that "a defect in an indictment which results in a failure to charge an offense can be raised at any time"); and Barbee v. State, 417 So.2d 611, 613 (Ala.Cr.App. 1982). However, we are unable to determine whether Lanier's conviction for the Lawson burglary as charged in Count II of the indictment should be reversed based on the jurisdictional defect in the indictment. An essential element of burglary in the first degree has been deleted from the indictment. Because it is unclear whether the deletion was upon Lanier's motion, we cannot determine whether the amended indictment is the result of invited error.[1] The resolution of this issue depends on information that cannot be ascertained from the record. At present, we are unable to discern from the remarks in the record the reason Count II of the indictment was altered or on whose motion it was altered. Absent additional information, we would have to conclude that the indictment charging Lanier with the Lawson burglary appears to be void.
Just before the jury was seated, the following exchange took place:
 "[PROSECUTOR]: I object to the amendment to the indictment.
 "THE COURT: All right. [Defense counsel], do you want to make any objections to that? I will strike the word `theft' in the —
"[PROSECUTOR]: The first burglary one?
 "THE COURT: It's the [second count]. That's the dwelling of Sherry *Page 936 
Lawson. Are you sure that's the one? I'm not sure which one that —
 "[PROSECUTOR]: Yes, sir. The one at [the Lawson house]. Where they were in the basement.
". . . .
 "[PROSECUTOR]: If you think it will be a cleaner record, I mean, we can — `intent to commit a crime therein; to-wit, attempted murder.' I mean I have no problem doing that.
 "[DEFENSE COUNSEL]: We're going to move to delete that right now.
 "THE COURT: Yeah. I'm going to delete that. We'll just leave it `commit a crime therein.'
"[PROSECUTOR]: All right."
(R. 13-14.)
The indictment charging Lanier was not sufficient to charge him with burglary in the first degree. It reads as follows:
 "TIMOTHY LANIER[,] whose name is to the grand jury otherwise unknown, did, knowingly and unlawfully enter or remain unlawfully in a dwelling of Sherry Lawson with intent to commit a crime therein, to-wit: Theft and while effecting entry or while in the dwelling or in immediate flight therefrom, said defendant, TIMOTHY LANIER or another participant, was armed with an explosive or deadly weapon, to-wit: a pistol in violation of Section § 13A-7-5 of the Alabama Criminal Code."
Parentheses enclosing the words "to-wit: Theft" were handwritten on the indictment, and the word "delete" was handwritten above the parenthetical. This writing seems to suggest that theft, the reference to which was deleted from the indictment, was not intended to be the specific crime the State was accusing Lanier of intending to commit when he unlawfully entered the Lawson house. The record contains an objection by the prosecutor to the "amendment to the indictment." (R. 13.) It is unclear from the record, however, on whose motion the indictment was amended. In addition, the record includes a remark made by the trial judge that the indictment would read to "commit a crime therein." (R. 14.) There is no indication in the record that the indictment was subsequently amended to charge another specific crime. This conclusion is reinforced by the fact that the trial judge did not instruct the jury as to a specific crime. (R. 555-58.)
An indictment must include all of the essential elements that constitute the offense, and it must not leave any element open to inference. See Heidelberg v. State, 575 So.2d 621, 622
(Ala.Cr.App. 1991); Barbee, 417 So.2d at 613. The intent to commit a specific crime is an essential element of burglary in the first degree, as compared, for example, to criminal trespass in the first degree, which does not require this element.[2] It is clear that an indictment charging burglary must set forth the specific crime intended to be committed within the dwelling. See Popwell v. State, 480 So.2d 41, 45 (Ala.Cr.App. 1985) (a burglary indictment must set forth and define the crime intended to be committed and "the use of broad terms such as `intent to commit a felony' is not sufficient"). This court is "bound, even in the absence of an objection, to take notice of the indictment's failure to include an essential element of the offense." Heidelberg, 575 So.2d at 622 (holding an indictment void for failing to allege an essential element of the crime). In order for a court to exercise jurisdiction, it must have jurisdiction over the accused and the crime, and the indictment must sufficiently charge the accused. See id. Absent an allegation in Lanier's indictment charging first-degree burglary that Lanier intended *Page 937 
to commit a specific crime while in the Lawsons' basement, Lanier was not put on notice of the crime of which he was accused and which he had to defend against.
There is no caselaw holding that the doctrine of invited error applies to jurisdictional defects attributable to the defendant's own actions. Nevertheless, out of an abundance of caution, we remand this case to give the trial court the opportunity to clarify the circumstances surrounding the amendment to Count II of Lanier's indictment. The trial court shall enter written findings as to the reason it amended the indictment and upon whose motion the indictment was altered. If necessary, the trial court may hold a hearing to resolve the questions. The trial court's return shall include the trial court's written findings and, if necessary, a transcript of any hearing. If the trial court finds that the amendment was not initiated by the appellant, the trial court has the authority to enter an order vacating the judgment. If, however, the trial court determines that the amendment was the result of a motion offered by the appellant, the trial court should report its written findings to this court. The trial court shall take all necessary action to allow a return to remand to be filed with this court within 42 days of this opinion.
Lanier raises an additional issue on appeal concerning the trial court's failure to deliver an instruction to the jury on criminal trespass in the first degree as a lesser offense of the burglary of the Lawson house. Because we are remanding this case for a determination of the issue of the validity of Lanier's indictment for the Lawson burglary, we will not address the propriety of a refusal to give an instruction on a lesser included offense.
For the above-stated reasons, this cause is remanded to the Circuit Court of Jefferson County with instructions. Therefore, the conviction of the appellant as to Count I is affirmed, and as to Count II, the cause is remanded with instructions.
AFFIRMED IN PART AND REMANDED.
Long, P.J., and McMillan, Brown and Baschab, JJ., concur.
[1] Our research indicates that the question whether the doctrine of invited error applies to jursidictional defects caused by an appellant is a matter of first impression in Alabama. We therefore decline to address this issue until return to remand should it arise.
[2] As stated earlier, "[a] person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein." Ala. Code 1975, § 13A-7-5. In comparison, a person commits "criminal trespass in the first degree if he knowingly enters or remains unlawfully in a dwelling." Ala. Code 1975, § 13A-7-2(a).