**Wayne W. SEMANCIK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A-7286.**

Court of Appeals of Alaska.

Oct. 17, 2002.

David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kim S. Stone, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Wayne W. Semancik threatened his neighbors with a firearm and broke a window of their house in an attempt to enter the residence because he believed (falsely) that they had stolen his dog. For this conduct, Semancik was indicted for attempted first-degree burglary.[1] But the indictment was flawed.

The crime of burglary consists of unlawfully entering or remaining in a building with the intent to commit a crime.[2] Forty years ago, in *Adkins v. State*, the Alaska Supreme Court ruled that a burglary indictment must specify this intended ("ulterior") crime be-

---

**1.** Semancik was indicted under two theories: AS 11.46.300(a)(1) (burglary of a dwelling) and AS 11.46.300(a)(2)(C) (using or threatening to use a dangerous instrument while committing burglary).

**2.** *See* AS 11.46.310(a).

cause it is an essential element of the charge.[3]

Semancik's indictment did not specify his intended crime (or any other element of burglary); instead, the indictment simply alleged that Semancik "inten[ded] to commit the offense of Burglary in the First Degree [and] engage[d] in conduct which constitute[d] a substantial step toward the commission of that crime".

Semancik did not attack his indictment, seek a bill of particulars, or otherwise raise this problem before or during his trial. Based on the State's evidence and the prosecutor's arguments, Semancik's attorney proceeded on the reasonable assumption that the alleged ulterior crime was assault. The defense attorney argued to the jury that Semancik's sole intention was a lawful one (to retrieve his dog) and that Semancik had no intention of committing assault (or any other crime) inside his neighbors' house.

The jury rejected this argument and convicted Semancik of attempted burglary. Now, on appeal, Semancik points out the flaw in the indictment and asks us to set aside his burglary conviction.

In *Adkins*, the supreme court not only ruled that a burglary indictment must specify the defendant's intended crime, but the court also ruled that a burglary indictment which fails to specify the defendant's intended crime is fatally flawed: it fails to "charge an offense" within the meaning of Alaska Criminal Rule 12(b)(2). This means that it is not too late for Semancik to raise this issue.

Under Criminal Rule 12(b)(2) and (e), a defendant is normally obliged to raise all "[d]efenses or objections based on defects in the indictment" before trial, otherwise these objections are forfeited. But Rule 12(b)(2) exempts two types of objections from this time limit: objections based on the indictment's "failure to show jurisdiction in the court or to charge an offense". In *Adkins*, the supreme court held that a burglary indictment's failure to specify the defendant's intended crime is the type of problem that falls within this latter exemption. Thus, a defendant is entitled to raise this objection on appeal even though the defendant has gone to trial and has been convicted and sentenced without ever bringing this issue to the attention of the trial court.[45]

(Alaska Criminal Rule 12(b)(2) declares that such an objection can be raised "at any time during [the] pendency of the proceeding". Arguably, this phrase could be read to require the defendant to voice the objection before the end of the proceeding in the trial court. *Adkins* does not specifically address this point, but the result in *Adkins* is clearly contrary to such an interpretation of Rule 12(b)(2). We note that the federal courts, construing their equivalent rule, also take the position that the phrase "during the pendency of the proceeding" includes an appeal).[6]

3.   389 P.2d 915, 916 (Alaska 1964).

4.   *Adkins*, 389 P.2d at 915–16.

5.   Alaska Criminal Rule 12(b)(2) has been amended since *Adkins* was decided, but the changes are not pertinent to this appeal. The original version of the rule is contained in Supreme Court Order No. 4 (October 4, 1959).

6.   *See United States v. Panarella*, 277 F.3d 678, 682 (3rd Cir.2002) ("We have squarely held that [Federal Criminal] Rule 12(b)(2) applies equally to ... objections raised [in the trial court] and objections raised for the first time before a Court of Appeals."); *United States v. Smith*, 223 F.3d 554, 571 (7th Cir.2000) ("[The defendant] makes his attack on the sufficiency of the indictment for the first time on appeal.... [I]t is clear that he is entitled to do so, for [Federal Criminal Rule] 12(b)(2) states that a defendant may raise at any time an objection that the indictment 'fails to show jurisdiction or to charge an offense,' and such an objection 'shall be noticed by the court at any time during the pendency of the proceedings.' Here, [the defendant] is arguing that the indictment's failure to allege that he took these acts 'knowingly and intentionally' means that it fails to charge an offense."); *United States v. Gama–Bastidas*, 222 F.3d 779, 785 (10th Cir. 2000) (allowing the defendant to challenge his indictment for failure to charge a crime even though the objection was raised for the first time at a re-sentencing hearing in the trial court following an appeal); *United States v. Adesida*, 129 F.3d 846, 850 (6th Cir.1997) (same); *United States v. Rosnow*, 9 F.3d 728, 730 (8th Cir.1993) (same); *Government of the Virgin Islands v. Pemberton*, 813 F.2d 626, 631 (3rd Cir.1987) ("This court has interpreted [Federal Criminal Rule] 12(b)(2) to mean that an objection to an information on the ground that it fails to charge an offense may be raised for the first time on appeal.").

To summarize: under *Adkins*, the failure of Semancik's indictment to specify his intended crime is a fatal defect in the indictment, and Semancik is entitled to raise this objection for the first time on appeal.

The State concedes that *Adkins* requires reversal of Semancik's attempted burglary conviction, but the State asks us to re-examine *Adkins* and modify Alaska's rule on this subject.

### The State's argument that Adkins was wrongly decided

The legal issue that our supreme court confronted in *Adkins* has created a split in American jurisdictions. Some states hold that a burglary indictment is fatally flawed unless it specifies the defendant's intended crime. Other states hold that a burglary indictment need not specify the defendant's intended crime or, alternatively, that a burglary indictment should specify the intended crime but that failure to specify this crime is a defect in form rather than a fatal flaw.

As the Iowa Supreme Court recently explained in *State v. Mesch*,[7] and as the Washington Supreme Court earlier explained in *State v. Bergeron*,[8] this split can generally be attributed to differences in the wording of the states' burglary statutes:

"One of the elements of common-law burglary was that the breaking and entering be with the intent to commit a felony" therein. At common law[,] no indictment for burglary was sufficient which failed to state the facts necessary to show the particular felony intended to be committed. Thus, at common law, the indictment obviously had to plead facts showing a felony was intended because[,] if anything other than a felony was intended[,] the breaking and entering did not constitute burglary. So it is that those states with burglary statutes which still require an intent to commit a felony, or intent to commit a felony or larceny, or intent to commit other designated crimes, can logically require that a specific intended crime be alleged and proved. There is no similar reason to require it in [a state] where burglary is a statutory offense and where [the] burglary statutes require only an intent to commit any crime.

*State v. Mesch*, 574 N.W.2d at 13, quoting *State v. Bergeron*, 711 P.2d at 1008.

Court decisions from around the country tend to group themselves as described in *Mesch* and *Bergeron*. In states where the burglary statute requires proof that the defendant intended to commit a particular type of crime (*e.g.*, a "felony", an "assault", or a "theft"), a burglary indictment is fatally flawed if it does not specify the defendant's intended crime.[9] On the other hand, in

---

7.  574 N.W.2d 10 (Iowa 1997).

8.  105 Wash.2d 1, 711 P.2d 1000 (1985).

9.  *See Commonwealth v. Walter*, 40 Mass.App.Ct. 907, 661 N.E.2d 942, 944 (1996) (construing a burglary statute that requires proof of the defendant's intent to commit a felony); *State v. Linn*, 251 Kan. 797, 840 P.2d 1133, 1138 (1992) (construing a burglary statute that requires proof of the defendant's intent to commit a felony); *People v. Palmer*, 83 Ill.App.3d 732, 39 Ill.Dec. 262, 404 N.E.2d 853, 857 (1980) (construing a burglary statute that requires proof of "intent to commit therein a felony or theft"); *People v. Failla*, 64 Cal.2d 560, 51 Cal.Rptr. 103, 414 P.2d 39, 41–42 (1966) (construing a burglary statute that requires proof of "intent to commit theft or any felony"); *State v. Allen*, 186 N.C. 302, 119 S.E. 504, 506 (1923) (construing a burglary statute that requires proof of the defendant's intent to commit a felony) (superseded by statute as held in *State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68, 73 (1994)).

Semancik cites one case in his reply brief, *Lanier v. State*, 733 So.2d 931 (Ala.Crim.App. 1998), that is, at first blush, *contra*. In *Lanier*, the court held that an indictment must specify the defendant's intended crime even though the burglary statute at issue required only proof of "intent to commit a crime". But the *Lanier* court relied on a line of decisions—*Coleman v. State*, 443 So.2d 1355, 1358 (Ala.Crim.App.1983); *Cliatt v. State*, 348 So.2d 509, 512 (Ala.Crim.App. 1977); and *Behel v. State*, 40 Ala.App. 689, 122 So.2d 537, 538 (Crim.App.1960)—that all dealt with a differently worded burglary statute: one that required proof that the defendant acted "with intent to commit theft or a felony". The *Lanier* court showed no awareness that these prior cases might not apply to a statute that only required proof of the defendant's intent to commit "a crime". This is probably because this issue was not litigated. The defendant in *Lanier* did not challenge the wording of the indictment on appeal; rather, the Alabama court noted this "jurisdictional defect" on its own motion. *See Lanier*, 733 So.2d at 935.

states where the burglary statute requires the government to prove only that the defendant intended to commit "a crime", the failure of the indictment to specify the intended crime does not invalidate the indictment. These decisions fall into two groups: Some of them hold that a burglary indictment need not specify the defendant's intended crime.[10] Others hold that a burglary indictment should specify the defendant's intended crime, but the failure to specify the intended crime is not a fatal flaw in the indictment. In other words, the defendant must raise this objection in the trial court (like other objections to the indictment). If the issue is not raised until appeal, the defendant must show plain error—generally, inability to anticipate the State's theory of prosecution and resulting prejudicial surprise.[11]

The burglary statute at issue in *Adkins* was former AS 11.20.080. Under this statute, a person committed the offense of "burglary in a dwelling house" if the person "br[oke] and enter[ed] a dwelling house with intent to commit a crime in it".[12] Because Alaska's burglary statute did not require proof that the defendant intended to commit a felony, an assault, a theft, or any other

specific type of crime, one would have expected the supreme court to decide *Adkins* the other way. The State asserts that *Adkins* indeed should have been decided the other way—that the supreme court mistakenly relied on cases from other jurisdictions without seeing that they were inapplicable. The State urges us to revisit the issue decided in *Adkins* and change Alaska's rule.

Three years ago, in *People v. Williams*,[13] the Supreme Court of Colorado engaged in just such a re-evaluation of precedent. Colorado's burglary and criminal trespass statutes require proof that the defendant committed the unlawful entry with intent to commit "a crime". The court had previously held that an indictment for burglary or trespass was fatally flawed if it did not specify the defendant's intended crime.[14] But after re-examining its statutes and surveying the case law from other jurisdictions, the Colorado court decided that its prior decisions on this issue had been wrong. Instead, the court held that a burglary or trespass indictment should, as a matter of form, specify the defendant's intended crime, but the failure of the indictment to specify the intended crime

**10.** *See State v. Robinson*, 289 N.J.Super. 447, 673 A.2d 1372, 1375 (App.1996) (holding that New Jersey's burglary statute, which requires proof that the unlawful entry was accomplished "with purpose to commit an offense", did not require the state to specify the defendant's intended offense); *Commonwealth v. Alston*, 539 Pa. 202, 651 A.2d 1092, 1094 (1994) (holding that Pennsylvania's burglary statute, which defines the offense as "an unauthorized entry with the intent to commit a crime after entry", did not require the state to specify the crime that the defendant intended to commit after entry); *People v. Mahboubian*, 74 N.Y.2d 174, 544 N.Y.S.2d 769, 543 N.E.2d 34, 44 (1989) (citing *People v. Mackey*, 49 N.Y.2d 274, 425 N.Y.S.2d 288, 401 N.E.2d 398, 400 (1980)) ("In order to secure a conviction for burglary, the People need only allege and prove a knowing and unlawful entry coupled with an intent to commit *a* crime therein. There is no requirement that the People allege or establish what particular crime was intended[.]" (emphasis in the original)).

**11.** *See State v. Frazier*, 73 Ohio St.3d 323, 652 N.E.2d 1000, 1009 (1995) (even though an indictment for aggravated burglary failed to specify the felony intended in the burglary, there was no plain error because the other counts in the indictment apprised the defendant of what he was indicted for and needed to defend against, and

because the state did not put on evidence of any felony other than those charged in the several counts of the indictment); *State v. Worsley*, 336 N.C. 268, 443 S.E.2d 68, 74 (1994) (failure of a burglary indictment to specify the defendant's intended crime is not a fatal defect because, through discovery and (if necessary) a bill of particulars, defendants will be able to adequately inform themselves of the nature of the charge); *State v. Skelton*, 247 Kan. 34, 795 P.2d 349, 359 (1990) (although a burglary indictment is defective in form unless it specifies the defendant's ulterior crime, "this defect does not automatically result in prejudicial error"); *State v. Waters*, 436 So.2d 66, 68–69 (Fla.1983) (holding that, in light of Florida's "broad reciprocal discovery rules", "[s]pecification of the offense intended is not so essential a part of the intent element as to require that it always be set out in the charging document.").

**12.** This former burglary statute is quoted in full in footnote 2 of *Donlun v. State*, 527 P.2d 472, 473 (Alaska 1974).

**13.** 984 P.2d 56, 58 (Colo.1999).

**14.** *See Gomez v. People*, 162 Colo. 77, 424 P.2d 387, 388 (1967); *Martinez v. People*, 163 Colo. 503, 431 P.2d 765, 767 (1967).

is not a substantive defect that voids the indictment.[15]

The Colorado court relied on reasoning similar to the analysis set forth in *Mesch* and *Bergeron*[16], as well as on the modern trend away from technical rules of pleading [17] and the policy that a conviction should not be overturned based on an indictment defect that does not tend to prejudice the substantial rights of the defendant [18]—the same policy embodied in Alaska Criminal Rule 7(c).

The State argues that even if we think that a burglary indictment should specify the defendant's intended crime, we should adopt an approach similar to the one followed in Colorado and the other states listed in footnote 11. That is, the State asks us to declare that this defect is non-fatal—so that if a defendant does not file a timely objection in the trial court, the defendant would not be entitled to automatic reversal of their conviction but would instead have to show that their ability to defend the charge was substantially prejudiced by the failure of the indictment to specify the intended crime.

There is Alaska case law to support this approach. In *Lupro v. State*, 603 P.2d 468 (Alaska 1979), and in *Thomas v. State*, 522 P.2d 528 (Alaska 1974), the Alaska Supreme Court endorsed the rule that an indictment should not be struck down merely because it fails to recite every necessary element of the crime, so long as the grand jury record (potentially supplemented by a bill of particulars) gives the defendant sufficient notice of the charge to enable him to prepare his defense and to permit him to claim former jeopardy in the event that he is later charged with the same offense.[19] But the supreme court did not apply this reasoning in *Adkins*.

The State points out that the *Adkins* rule allows a defense attorney to purposely "overlook" an obvious defect in the indictment if the defect appears inconsequential to the attorney's trial preparation. For example, even though a burglary indictment may fail to specify the defendant's intended crime,

there may be complete agreement between the prosecution and the defense attorney concerning what crime (or crimes) the State thinks the defendant intended to commit inside the building. In such circumstances, the defense attorney will be able to prepare the case just as fully as if the indictment named the defendant's intended crime. But if the defense attorney stays mum about the defect in the indictment, he or she obtains a huge tactical advantage. Under *Adkins*, the defense attorney can risk trial and then, if the defendant is convicted, the attorney can (in the State's words) "pull the ace from his sleeve and present the [*Adkins* objection] on appeal [even though] he remained silent about [it] during trial".

The State's arguments have considerable force, but we are not the proper audience. *Adkins* was based on our supreme court's interpretation of Alaska's burglary statute and Alaska Criminal Rule 12(b)(2). Although both the statute and the rule have been amended since 1964, these amendments do not undermine the decision in *Adkins*. The burglary statute still requires proof of the defendant's intent to commit "a crime", and Rule 12(b)(2) still imposes no time limit on a defendant's ability to object to an indictment on the ground that it "fail[s] ... to charge an offense". We have no authority to alter the supreme court's resolution of this issue of statutory construction.

### Conclusion

Semancik's conviction for attempted burglary is REVERSED and the corresponding count of his indictment is DISMISSED. The State remains free to reindict and retry Semancik if it wishes.

COATS, Chief Judge, dissenting.

The State charged Semancik with several offenses, including one count of attempted burglary in the first degree. A person commits burglary in the first degree if he enters

---

**15.** *Williams*, 984 P.2d at 61, 65.

**16.** *See id.* at 61–63.

**17.** *See id.* at 60.

**18.** *See id.* at 64.

**19.** *Lupro*, 603 P.2d at 472–73; *Thomas*, 522 P.2d at 530.

a dwelling with the intent to commit a crime.[1] Although it appears that the State could have charged Semancik with a completed burglary for breaking the window of his neighbor's house and putting his arm through the window,[2] the State's theory was that this action constituted a substantial step towards burglary and charged the offense as an attempted burglary. In the indictment, the State never specified what crime Semancik intended to commit when he entered his neighbor's house. But Semancik never moved to dismiss the indictment or seek a bill of particulars. Furthermore, Semancik did not object to the court's jury instructions. From the record, it is clear that the State alleged that the crime which Semancik intended to commit was assault. Semancik argued to the jury that his sole intention was to retrieve his dog and that he had no intention of committing an assault. The jury rejected this argument.

Now, for the first time on appeal, Semancik points out that the indictment did not specify that he intended to commit an assault in the dwelling. He relies on *Adkins v. State*,[3] a case decided by the Alaska Supreme Court nearly forty years ago. The State concedes that *Adkins* appears to require this result but argues that *Adkins* was wrongly decided.

As a lower court, we are bound by the decisions of the Alaska Supreme Court. And given the State's position, I certainly respect my colleagues' decision concluding that *Adkins* is controlling. But we do have a duty to review a concession by the State to make sure that the concession "is supported by the record on appeal and has legal foundation."[4] And *Adkins*, as interpreted by Semancik, seems to me to be contrary to supreme court decisions decided subsequent to *Adkins*. For instance, in *Lupro v. State*[5] and *Thomas v. State*,[6] the Alaska Supreme Court held that so long as an indictment gives the defen-

dant sufficient notice of the charge to enable him to prepare his defense and to be protected against double jeopardy, the indictment is sufficient even if it does not set out every necessary element of the crime.[7]

Furthermore, Alaska Criminal Rule 12(b)(2) requires motions against an indictment to be made before trial. The policy behind the rule is clear. This case presents an excellent example. If Semancik had pointed out the defect in the indictment before trial, the prosecution could easily have cured the problem. By not pointing out the problem in the indictment, Semancik did not suffer any prejudice: it was obvious that the State was charging him with attempting to enter the neighbor's dwelling with the intent to commit an assault. By not objecting, Semancik was able to go to trial on the attempted burglary charge without risk. When the jury rejected his defense, Semancik was able to have his conviction reversed. This is obviously terrible policy. Case law from other states with burglary statutes similar to Alaska appears to universally recognize this. These cases are set out on pages 5 to 9 of the majority opinion. Some of these states hold that it is not necessary in a burglary indictment to specify the defendant's intended crime. Other states, with statutes similar to Alaska's, do hold that the indictment should specify the intended crime. But even these states hold that the failure to specify the crime is merely a defect in the indictment, and the defendant must either object or show plain error in order to prevail.

I therefore conclude that there is a possibility that we are misreading *Adkins*. The *Adkins* court may have concluded that Adkins might have been prejudiced by the failure to specify the underlying crime in the indictment, even though, in its opinion, the court did not discuss prejudice. In the event that *Adkins* actually did hold that a burglary indictment was fatally flawed unless it speci-

---

1. AS 11.46.300; AS 11.46.310.

2. *Sears v. State*, 713 P.2d 1218, 1220 (Alaska App.1986).

3. 389 P.2d 915 (Alaska 1964).

4. *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972).

5. 603 P.2d 468 (Alaska 1979).

6. 522 P.2d 528 (Alaska 1974).

7. *Lupro*, 603 P.2d at 472–73; *Thomas*, 522 P.2d at 530.

fied the defendant's intended crime, I conclude that the force of that decision is undermined by later supreme court cases such as *Lupro* and *Thomas*. I certainly recognize that, as a legal matter, my colleagues may be correct in concluding that we are required to follow Semancik's interpretation of *Adkins*. If this is the case, I do not believe that *Adkins* would survive review by the Alaska Supreme Court. Perhaps my dissent will serve in some way to encourage this reexamination.